Filed 7/22/22  P. v. Velis CA2/2

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION TWO

|  |  |
|---|---|
| THE PEOPLE, | B313687 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. VA009573) |
| v. | |
| JORGE ULISES VELIS, | |
| Defendant and Appellant. | |

APPEAL from a postjudgment order of the Superior Court of Los Angeles County.  Debra Cole-Hall, Judge.  Affirmed.

Jonathan E. Demson, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Idan Ivri and Michael C. Keller, Deputy Attorneys General, for Plaintiff and Respondent.

———————————————————

Jorge Ulises Velis appeals the denial of his Penal Code[1] section 1172.6 (former § 1170.95)[2] petition for resentencing following an evidentiary hearing.[3]  Appellant contends he is entitled to mandatory resentencing under section 1172.6, subdivision (d)(2) based on the jury's acquittal on the robbery charge, which he characterizes as a prior jury finding that appellant was not a major participant in the underlying felony. In the alternative, and as an independent ground for reversal, appellant maintains that the superior court's conclusion that appellant could still be convicted of second degree murder under current law is not supported by substantial evidence.  We disagree with both assertions and affirm the superior court's denial of the petition for resentencing.

## PROCEDURAL BACKGROUND

On May 3, 1993, following a jury trial, Velis was convicted of second degree murder (§ 187, subd. (a)) and attempted extortion (§§ 664/518) arising out of the 1991 robbery of a jewelry

---

[1] Undesignated statutory references are to the Penal Code.

[2] Effective June 30, 2022, Penal Code section 1170.95 was renumbered section 1172.6, with no change in the text.  (Stats. 2022, ch. 58, § 10.)

[3] The superior court initially denied appellant's section 1172.6 petition on the ground that Senate Bill No. 1437, along with former section 1170.95 as enacted by the legislation, is unconstitutional because it impermissibly amended Proposition 7.  (Ballot Pamp., Gen. Elec. (Nov. 7, 1978) text of Prop. 7.)  We reversed the superior court's order in an unpublished opinion filed on June 29, 2020, and remanded the matter for further proceedings in accordance with section 1172.6. (*People v. Velis* (June 29, 2020, B301681) [nonpub. opn.].)

store in which Velis's codefendant shot and killed the store owner.[4]  The jury acquitted Velis of first degree murder and robbery, and found not true the enhancement allegation that a principal was armed with a firearm (§ 12022, subd. (a)(1)).  Velis was sentenced to 15 years to life for the murder with a concurrent term of 18 months for the attempted extortion.  (*People v. Velis*, *supra*, B301681.)

On remand following our reversal of the superior court's summary denial of appellant's petition for resentencing under section 1172.6, the superior court issued an order to show cause.  After an evidentiary hearing, the superior court denied the petition, finding beyond a reasonable doubt that appellant was guilty of murder as a direct aider and abettor who acted with malice.

## FACTUAL BACKGROUND[5]

"Velis went to Pedro Valdez's jewelry store and left a watch to be engraved.  The watch was to be ready for pickup on October 22, 1991.  On that date, Velis and Quijada were observed acting suspiciously in the parking lot of the mini-mall where the jewelry store is located.  Velis walked back and forth across the parking lot two or three times.  As he walked back and forth, Velis looked over his shoulder toward the stores in the mini-mall.

---

[4] Velis's codefendant was convicted of first degree murder, robbery, and threatening a witness, with true findings on the robbery-murder special circumstance allegation (§ 190.2, subd. (a)(17)) and the personal gun-use enhancement allegations.

[5] The following factual summary is drawn from this court's prior opinion affirming appellant's judgment of conviction on direct appeal.  (*People v. Jason C. Quijada et al.* (Dec. 19, 1994, B078021) [nonpub. opn.].)

Quijada appeared nervous and glanced back and forth between the stores in the mini-mall and up and down the street. Velis walked back and forth, each time returning to where Quijada was standing and talking with him. After talking for a while, the two men then turned and approached the stores, with Velis walking in the lead.

"As Velis stood watch, Quijada entered Pedro Valdez's jewelry store with a loaded gun. Immediately upon entering the store, Quijada cocked the gun. As Velis stood by, Quijada threatened Valdez, forcefully yanked off his bracelet and necklace, and shot Valdez at close range. Velis and Quijada then ran off together. Velis and Quijada were apprehended shortly after the murder of Valdez. The victim's jewelry was found in Quijada's pants pocket. After his arrest, Velis admitted to a police officer that prior to going to the jewelry store, his companion assured him there were no cameras or guns inside the jewelry store and all he had to do was stand outside and not let anyone in the store." (*People v. Quijada, supra*, B078021.)

## DISCUSSION

I. **Appellant Is Not Entitled to Resentencing Under Section 1172.6 as a Matter of Law Because His Second Degree Murder Conviction Was Not Based on the Felony Murder Rule or the Natural and Probable Consequences Doctrine**

Resentencing relief under section 1172.6 is available only to "individuals convicted of murder under the felony-murder rule or the natural and probable consequences doctrine." (*People v. Mancilla* (2021) 67 Cal.App.5th 854, 866–867.) Appellant was not convicted under either of these theories or any other theory of

4

imputed malice.  Appellant therefore does not qualify for relief under section 1172.6 as a matter of law.

### A. *Relevant legal principles*

Effective January 1, 2019, Senate Bill No. 1437 "amend[ed] the felony murder rule and the natural and probable consequences doctrine, as it relates to murder, to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life." (Stats. 2018, ch. 1015, § 1, subd. (f); *People v. Lewis* (2021) 11 Cal.5th 952, 959 (*Lewis*); *People v. Gentile* (2020) 10 Cal.5th 830, 842 (*Gentile*).)

With one narrow exception (where the victim was a peace officer killed in the performance of duty and the defendant knew or reasonably should have known that fact (§ 189, subd. (f)), Senate Bill No. 1437 effectively eliminates murder convictions premised on any theory of vicarious liability—that is, any theory by which a person can be convicted of murder for a killing committed by someone else, such as felony murder or the natural and probable consequences doctrine—unless the People also prove that the nonkiller defendant personally acted with the intent to kill or was a major participant who acted with reckless disregard to human life. (§ 189, subd. (e) [requiring that participant in specified felony during which a death occurs may be convicted of murder only if he or she was the actual killer, an aider and abettor who acted with intent to kill, or a major participant in the underlying felony who acted with reckless indifference to human life]; § 188, subd. (a)(3) [amending natural and probable consequences doctrine to require that all principals act with express or implied malice to be convicted of murder, with

5

the exception of felony murder under § 189, subd. (e)]; *Gentile, supra,* 10 Cal.5th at pp. 842–843.)  By these amendments the Legislature has declared that "[m]alice shall not be imputed to a person based solely on his or her participation in a crime." (§ 188, subd. (a)(3).)

With the addition of former section 1170.95 (now § 1172.6), Senate Bill No. 1437 allows a person previously convicted of murder under a felony murder or natural and probable consequences theory to seek resentencing if he or she could no longer be convicted of murder because of the amendments to sections 188 and 189.[6]  (§ 1172.6, subd. (a)(3); *Lewis, supra,* 11 Cal.5th at pp. 957, 959, 971); *Gentile, supra,* 10 Cal.5th at p. 843; *People v. Martinez* (2019) 31 Cal.App.5th 719, 722–723.)  But a petitioner is ineligible for relief under section 1172.6 if the record of conviction shows that he or she was convicted under a theory of liability that remains valid after Senate Bill No. 1437's amendments to the law of murder.  (*Gentile, supra,* 10 Cal.5th at p. 848 ["Senate Bill 1437 does not eliminate direct aiding and abetting liability for murder because a direct aider and abettor to murder must possess malice aforethought"]; *People v. Estrada* (2022) 77 Cal.App.5th 941, 945  [first degree murder conviction based on direct aiding and abetting with intent to kill is ineligible for § 1172.6 resentencing]; *People v. Farfan* (2021) 71 Cal.App.5th 942, 956–957 [jury's true finding on robbery-murder special-circumstance allegation made defendant ineligible for relief

---

[6] As amended by Senate Bill No. 775 (Stats. 2021, ch. 551, § 2), section 1172.6 now also applies to persons previously convicted of attempted murder or manslaughter under a felony murder or natural and probable consequences theory. (§ 1172.6, subd. (a).)

under section 1172.6 as a matter of law]; *People v. Medrano* (2021) 68 Cal.App.5th 177, 182 (*Medrano*) ["Section [1172.6] applies only to persons 'convicted of felony murder or murder under a natural and probable consequences theory' "]; see also *People v. Daniel* (2020) 57 Cal.App.5th 666, 677 [in the absence of any instructions on felony murder or murder under the natural and probable consequences doctrine, defendant does not qualify as " '[a] person convicted of felony murder or murder under a natural and probable consequences theory,' " and is ineligible for 1172.6 relief as a matter of law].)

If a petitioner makes a prima facie showing for relief under section 1172.6, the trial court is required to issue an order to show cause and to hold a hearing to determine whether to vacate the conviction, recall the sentence, and resentence the petitioner as set forth in the statute. (§ 1172.6, subd. (d)(1).) However, "[i]f there was a prior finding by a court or jury that the petitioner did not act with reckless indifference to human life or was not a major participant in the [underlying] felony, the court shall vacate the petitioner's conviction and resentence the petitioner." (§ 1172.6, subd. (d)(2).) In the absence of such a finding, the court must hold an evidentiary hearing to determine whether the petitioner is entitled to relief. The burden at that hearing rests with the prosecution "to prove, beyond a reasonable doubt, that the petitioner is guilty of murder or attempted murder under California law as amended by the changes to Section 188 or 189 made effective January 1, 2019." (§ 1172.6, subd. (d)(3).)[7] And

---

[7] In addition to expanding section 1172.6's scope, Senate Bill No. 775 also clarified its procedures. The legislation

"[i]f the prosecution fails to sustain its burden of proof, the prior conviction, and any allegations and enhancements attached to the conviction, shall be vacated and the petitioner shall be resentenced on the remaining charges." (*Ibid*.)

**B. *The jury's acquittal on the robbery charge means that appellant's second degree murder conviction could not have been based on the felony-murder rule.***

Appellant argues he is entitled to mandatory resentencing pursuant to section 1172.6, subdivision (d)(2) because the not-guilty verdict on the robbery charge constitutes a prior finding by the jury that appellant was not a major participant in the robbery. To the contrary, the jury's acquittal on the robbery charge means that appellant was not convicted of felony murder, and subdivision (d)(2) of section 1172.6 has no application here.

" 'A felony murder arises when a killing occurs in the course of the commission of one of the predicate felonies enumerated in Penal Code section 189.' " (*Medrano*, *supra*, 68 Cal.App.5th at p. 182; see *Gentile, supra*, 10 Cal.5th at p. 848 [where defendant not charged with a predicate felony that can serve as the basis for felony murder, felony-murder rule is inapplicable].) Robbery is one such predicate felony; extortion is not. (§ 189, subd. (a); *People v. Smith* (1998) 62 Cal.App.4th 1233, 1238 [extortion is not a predicate offense for the felony-murder rule].) Section 189, subdivision (e) states the requirements for felony-murder liability: "A participant in the

---

specifically requires "the trial court, acting as an independent fact finder, to determine beyond a reasonable doubt whether defendant is guilty of murder under a valid theory of murder." (*People v. Garrison* (2021) 73 Cal.App.5th 735, 745 (*Garrison*).)

8

perpetration or attempted perpetration of a felony listed in subdivision (a) in which a death occurs is liable for murder only if one of the following is proven:

"(1) The person was the actual killer.

"(2) The person was not the actual killer, but, with the intent to kill, aided, abetted, counseled, commanded, induced, solicited, requested, or assisted the actual killer in the commission of murder in the first degree.

"(3) The person was a major participant in the underlying felony and acted with reckless indifference to human life."

Under section 1172.6, subdivision (d)(2), a petitioner who was convicted of felony murder is entitled to automatic vacatur of the murder conviction and resentencing on any remaining counts of conviction if there is "a prior finding by a court or jury that the petitioner did not act with reckless indifference to human life or was not a major participant in the felony." (*Ibid*.; *People v. Clayton* (2021) 66 Cal.App.5th 145, 155.) This situation arises where a jury has convicted the defendant of felony murder and the theory of major participation and reckless indifference to human life was presented, but the jury nevertheless found a felony-murder special-circumstance allegation not true, or the special-circumstance finding was reversed on review. (See *People v. Flint* (2022) 75 Cal.App.5th 607, 614–615; *People v. Harrison* (2021) 73 Cal.App.5th 429, 440; *Clayton*, at pp. 154–155; *People v. Ramirez* (2019) 41 Cal.App.5th 923, 932.) In such circumstances, the prosecution is precluded from relitigating the question of whether the defendant was a major participant in the underlying felony who acted with reckless indifference to human life, and the petitioner is entitled to immediate relief. (See *Flint*, at p. 615 [in enacting § 1172.6, subd. (d)(2) to streamline the process where

9

the record clearly establishes the petitioner's eligibility, "the Legislature has determined that [the prosecution] should not have a second bite at the apple"].)

Contrary to appellant's contention, the jury's acquittal on the robbery charge in this case does not operate as a prior finding by the jury making appellant eligible for relief under subdivision (d)(2) of section 1172.6.  That is because subdivision (d)(2) does not operate independently of the rest of section 1172.6:  A petitioner must first meet certain basic statutory requirements to qualify for resentencing consideration.  One of those prerequisites is that the petitioner has been "convicted of felony murder or murder under the natural and probable consequences doctrine or other theory under which malice is imputed to a person based solely on that person's participation in a crime" (§ 1172.6, subd. (a)), and could no longer be convicted of murder because of the changes to the law of murder.  (§ 1172.6, subd. (a)(3); see *Medrano*, *supra*, 68 Cal.App.5th at p. 182.)

Section 1172.6, subdivisions (a) and (d)(2) must be harmonized to the greatest extent possible.  (*Lewis*, *supra*, 11 Cal.5th at p. 961 [" ' "We must harmonize 'the various parts of a statutory enactment . . . by considering the particular clause or section in the context of the statutory framework as a whole' " ' "].)  Thus, if the petitioner was not convicted of felony murder, he or she is ineligible for relief under section 1172.6, subdivision (a), and subdivision (d)(2) does not even apply.

The jury instructions given in this case allowed the jury to find appellant guilty of first degree murder under the felony-

murder rule only if it found appellant guilty of robbery.[8] Appellant could have been convicted of robbery either as a direct aider and abettor to that crime or as an aider and abettor to an attempted extortion if robbery was the natural and probable consequence of the attempted extortion. (CALJIC No. 3.02.) Thus, if the jury had convicted appellant as an aider and abettor to the robbery, it could have found appellant guilty of first degree felony murder whether or not he had any intent to kill.

But the jury acquitted appellant on the robbery charge. That acquittal can mean only one thing: Appellant was not convicted of second degree felony murder, and section 1172.6, subdivision (d)(2) has no application to this case.

**C. *The jury instructions did not permit the jury to convict appellant of murder under the doctrine of natural and probable consequences.***

Appellant contends that the jury's murder conviction was likely based on a finding that murder was the natural and probable consequence of attempted extortion, based on an

---

[8] The jury was instructed pursuant to CALJIC No. 8.21:

"The unlawful killing of a human being, whether intentional, unintentional or accidental, which occurs [during the commission or attempted commission of the crime] of [*robbery*] is *also* murder of the first degree when the perpetrator had the specific intent to commit such crime.

"The specific intent to commit *robbery* and the commission or attempted commission of such crime must be proved beyond a reasonable doubt." (Backets in original; handwritten material in italics.)

There were no instructions allowing the jury to convict appellant of second degree murder on a felony-murder theory.

ambiguity in the jury instruction on the natural and probable consequences doctrine.**9**  Appellant reaches this conclusion by separating the first paragraph of the instruction, which defines the natural and probable consequences doctrine generally, from the rest of the instruction, which sets forth the elements required to find appellant guilty of robbery as a natural and probable consequence of attempted extortion.  He then argues that the "additional instructions" (i.e., the second part of the same instruction) merely provided one example of how the doctrine works, but did not limit its application to robbery as a natural and probable consequence of extortion.  We reject appellant's interpretation and find no such ambiguity in the natural and probable consequences instruction given in this case.

---

**9** The jury was instructed pursuant to CALJIC No. 3.02 (1992 rev.) as follows:

"One who aids and abets [another] in the commission of a crime is not only guilty of [that crime] but is also guilty of any other crime committed by a principal which is a natural and probable consequence of the crime originally aided and abetted.

"In order to find the defendant *Velis* guilty of the crime of *robbery*, [as charged in Count[s] *2*,] you must be satisfied beyond a reasonable doubt that:

"(1) The crime of *attempted extortion* [was] committed,

"(2) The defendant *Velis* aided and abetted such crime,

"(3) A co-principal in such crime committed the crime of *robbery*, and

"(4) The crime of *robbery* was a natural and probable consequence of the commission of the crime of *attempted extortion*."  (Backets in original; handwritten material in italics.)

In reviewing a jury instruction for any ambiguity that may have misled the jury, we must consider the instructions together as a whole, not separate them into their component parts to consider independently. (*People v. Carrington* (2009) 47 Cal.4th 145, 192 [" '[T]he correctness of jury instructions is to be determined from the entire charge of the court, not from a consideration of parts of an instruction or from a particular instruction' "].) We presume jurors are intelligent and capable of understanding and correctly applying the trial court's instructions. (*People v. Bryant, Smith and Wheeler* (2014) 60 Cal.4th 335, 433; *People v. Gonzales* (2011) 51 Cal.4th 894, 940.) Finally, " '[a] defendant challenging an instruction as being subject to erroneous interpretation by the jury must demonstrate a reasonable likelihood that the jury understood the instruction in the way asserted by the defendant.' " (*People v. Solomon* (2010) 49 Cal.4th 792, 822.)

Reviewing the natural and probable consequences instruction given in this case together with the jury instructions as a whole, we find no ambiguity in CALJIC No. 3.02 as given, and no reasonable likelihood the jury would have interpreted this instruction to allow a murder conviction under the natural and probable consequences doctrine. Contrary to appellant's assertion, there is nothing in the plain language of the instruction to indicate that the text following the first paragraph is meant simply as an example of how the doctrine of natural and probable consequences works. Rather, after introducing the doctrine of natural and probable consequences, the text went on to describe its specific application in this case to Velis. The instruction explicitly only permitted the jury to rely on the natural and probable consequences doctrine to find appellant

guilty of robbery, not murder, as a natural and probable consequence of the crime of attempted extortion.

Appellant also contends that in its prior decision on direct appeal this court "upheld the viability of a theory of liability for second degree murder based on the natural and probable consequences doctrine." He cites the following passage from the opinion (which comes at the end of the discussion in which the court found substantial evidence to support appellant's conviction of second degree murder):

"[A]ssuming arguendo the defense version of events that a mere extortion to scare the victim into paying money and not a killing was planned, Velis fails to appreciate the fact that extortion by definition involves 'a wrongful use of force or fear.' (Pen. Code, § 518.) A natural and reasonable consequence of forcible extortion is that events may escalate into a murder, even though unplanned, for which the aider and abettor is liable as a principal on the theory of vicarious liability." (*People v. Quijada, supra*, B078021.)

Although this passage indicates the court might have been persuaded to consider the natural and probable consequences doctrine or another theory of imputed malice as a basis for upholding the judgment, it did not do so. Rather, in the preceding discussion, the court detailed the evidence that established appellant as "an active participant in the crimes from start to finish," who "was indeed aware of the existence of [his codefendant's] gun," and was therefore a direct aider and abettor who acted with malice. (*People v. Quijada, supra*, B078021.) The fact that the decision contains dicta without careful analysis which could have supported a different theory of affirming the conviction does not persuade us that appellant was convicted of

14

second degree murder under the natural and probable consequences doctrine or other theory of imputed malice. (See *People v. Evans* (2008) 44 Cal.4th 590, 599 [" '[a]n appellate decision is not authority for everything said in the court's opinion but only "for the points actually involved and actually decided" ' "].)

## II. Substantial Evidence Supports the Superior Court's Finding that Appellant Acted with Malice in Aiding and Abetting the Murder

Even assuming appellant is not ineligible for relief under section 1172.6 as a matter of law, the superior court's determination that appellant is guilty of murder as a direct aider and abettor who acted with malice is supported by substantial evidence.[10]

### A. *The standard of review*

On appeal from a trial court's denial of relief under section 1172.6 following an evidentiary hearing, we review the trial

---

[10] Relying on *People v. Langi* (2022) 73 Cal.App.5th 972, appellant argues that the combination of ambiguities in CALJIC No. 8.31—defining implied malice, and CALJIC No. 3.01—defining aiding and abetting, allowed the jury to convict appellant of second degree murder without finding that he personally acted with malice. Accepting for the sake of argument that *Langi* correctly determined these instructions may, in some cases, allow the jury to convict based on imputed malice, the application of its conclusion to this case means only that appellant is not ineligible for section 1172.6 relief as a matter of law. Because the superior court held an evidentiary hearing and found appellant guilty of second degree murder based on actual malice, *Langi* has no application to the instant case.

15

court's determination for substantial evidence. (*People v. Clements* (2022) 75 Cal.App.5th 276, 298 (*Clements*); *Garrison, supra*, 73 Cal.App.5th at p. 747.) Under that familiar standard, "we review the record 'in the light most favorable to the judgment below to determine whether it discloses substantial evidence— that is, evidence which is reasonable, credible, and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt.' " (*People v. Westerfield* (2019) 6 Cal.5th 632, 713.)

Appellant, however, contends that deference to the superior court's findings is inappropriate where the court relied entirely on the trial transcripts to make its factual determinations. He maintains that in such cases the reviewing court should consider the evidence independently and draw its own factual conclusions without being bound by the superior court's findings. We disagree. Regardless of whether either party presents new or additional evidence as provided under section 1172.6, subdivision (d)(3), the trial court's findings based on the transcripts and other written evidence would be entitled to no less deference from this court. (*Haraguchi v. Superior Court* (2008) 43 Cal.4th 706, 711, fn. 3 ["that the trial court's findings were based on declarations and other written evidence does not lessen the deference due those findings"]; *Shamblin v. Brattain* (1988) 44 Cal.3d 474, 479 ["Even though contrary findings *could* have been made, an appellate court should defer to the factual determinations made by the trial court when the evidence is in conflict. This is true whether the trial court's ruling is based on oral testimony or declarations"].)

The court in *Clements* considered and rejected appellant's argument. (*Clements, supra*, 75 Cal.App.5th at pp. 297–298.)

Acknowledging that "it's unusual to ask the trial judge to sit as the fact finder and (in some cases) make factual determinations on a cold record," *Clements* stated that not only is it possible for a trial judge to review a trial transcript to determine whether the petitioner committed murder under a still-valid theory (a factual question), but that is precisely the task the Legislature set before the trial court in a hearing pursuant to section 1172.6, subdivision (d)(3). (*Id.* at p. 297.) Thus, as the *Clements* court explained: "Our job on review is different from the trial judge's job in deciding the petition. While the trial judge must review all the relevant evidence, evaluate and resolve contradictions, and make determinations as to credibility, all under the reasonable doubt standard, our job is to determine whether there is any substantial evidence, contradicted or uncontradicted, to support a rational fact finder's findings beyond a reasonable doubt." (*Id.* at p. 298.)

## B. *Substantial evidence supports the superior court's finding of actual malice*

Murder is defined as "the unlawful killing of a human being, or a fetus, with malice aforethought." (§ 187, subd. (a).) Malice may be express or implied. (§ 188, subd. (a).) "Express malice requires a showing that the assailant either desires the victim's death or knows to a substantial certainty that the victim's death will occur." (*People v. Covarrubias* (2016) 1 Cal.5th 838, 890; *People v. Beltran* (2013) 56 Cal.4th 935, 941 [" 'Express malice is an intent to kill' "].) "[M]alice is implied when the killing resulted from an intentional act, the natural consequences of which are dangerous to human life, performed with knowledge of and conscious disregard for the danger to human life." (*People v. Thomas* (2012) 53 Cal.4th 771, 814.)

17

Our Supreme Court has "explained that an aider and abettor's guilt 'is based on a combination of the direct perpetrator's acts and the aider and abettor's own acts and own mental state.' " (*People v. Perez* (2005) 35 Cal.4th 1219, 1225, quoting *People v. McCoy* (2001) 25 Cal.4th 1111, 1117 (*McCoy*).) Establishing aider and abettor liability thus requires three distinct elements of proof: (1) "a crime committed by the direct perpetrator," (2) "the aider and abettor's . . . knowledge of the direct perpetrator's unlawful intent and an intent to assist in achieving those unlawful ends," and (3) "conduct by the aider and abettor that in fact assists the achievement of the crime." (*Perez*, at p. 1225; *People v. Carrasco* (2014) 59 Cal.4th 924, 968–969.)

While Senate Bill No. 1437 eliminated natural and probable consequences liability for second degree murder based on *imputed* malice, implied malice remains a valid theory of second degree murder liability for an aider and abettor. (*Gentile, supra*, 10 Cal.5th at p. 850 ["an aider and abettor who does not expressly intend to aid a killing can still be convicted of second degree murder if the person knows that his or her conduct endangers the life of another and acts with conscious disregard for life"]; *People v. Rivera* (2021) 62 Cal.App.5th 217, 232 ["In other words, a person may still be convicted of second degree murder, either as a principal or an aider and abettor, 'if the person knows that his or her conduct endangers the life of another and acts with conscious disregard for life' "]; *People v. Offley* (2020) 48 Cal.App.5th 588, 595–596 [Senate Bill No. 1437 did not "alter the law regarding the criminal liability of direct aiders and abettors of murder because such persons necessarily 'know and share the murderous intent of the actual perpetrator' "].)

18

The mental state for implied malice murder requires the defendant act with a conscious disregard for life, knowing that her or his conduct endangers the life of another. (*People v. Cravens* (2012) 53 Cal.4th 500, 508.) Because the "aider and abettor's mental state must be at least that required of the direct perpetrator," in order to prove culpability under an aider and abettor theory, " 'the prosecution must show that the defendant acted "with knowledge of the criminal purpose of the perpetrator *and* with an intent or purpose either of committing, or of encouraging or facilitating commission of, the offense." ' " (*McCoy*, *supra*, 25 Cal.4th at p. 1118.) It follows that to aid and abet an implied malice murder, the direct aider and abettor must intentionally commit, encourage, or facilitate life-endangering conduct with knowledge of the perpetrator's purpose and conscious disregard for life. (*Ibid.* & fn. 1.) And "[b]ecause direct evidence of a defendant's intent rarely exists, intent may be inferred from the circumstances of the crime and the defendant's acts." (*People v. Sanchez* (2016) 63 Cal.4th 411, 457.)

Here, the superior court reviewed the trial transcripts and the prior appellate opinion to find beyond a reasonable doubt that appellant was "guilty of second degree murder as an aider and abettor with malice aforethought," and our review of the evidence presented at appellant's trial amply supports the superior court's finding of malice. Substantial evidence supports the superior court's finding that appellant and Quijada had planned the crime together before they even went to the jewelry store on the day of the murder: First, appellant set the stage for the criminal enterprise by leaving his watch at Valdez's jewelry store for engraving. Then, shortly before the murder on the day appellant was to pick up the watch, he and Quijada nervously walked back

19

and forth in the parking lot of the shopping center where the jewelry store was located, looking at the stores, and stopping to talk to each other. Indeed, appellant and Quijada's pacing around the parking lot was suspicious enough to alert witnesses that something was going on. Finally, appellant and Quijada set off together for the jewelry store with appellant leading the way.

A customer wishing to enter Valdez's jewelry store had to be buzzed in by someone inside at the back of the store. After the person entered the store, the security door would swing shut and lock; the person could leave only by being buzzed out. If the security door were blocked from closing, however, the locking mechanism would not engage, and anyone could simply go through the door. Quijada walked into the jewelry store with a loaded gun at the ready. Appellant, who was standing watch at the door, knew that Quijada was carrying a gun.

Appellant continued to participate in the crime as a lookout, and the evidence supported an inference that appellant provided an escape route for Quijada by holding the security door ajar as Quijada robbed Valdez of his bracelet and necklace and shot him. After the murder appellant and Quijada ran away and remained together until just before they were apprehended by police.

Viewing the evidence in the light most favorable to the superior court's findings, we conclude substantial evidence supports the superior court's determination that appellant was guilty of murder as a direct aider and abettor who acted with malice.

## DISPOSITION

The order of the superior court is affirmed.

NOT TO BE PUBLISHED.


                                        LUI, P. J.

We concur:



CHAVEZ, J.



HOFFSTADT, J.

21